**RECORD NO. 14-4595**

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

THOMAS EARL FAULLS, SR.,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  WESTERN DISTRICT OF VIRGINIA
AT CHARLOTTESVILLE

**OPENING BRIEF OF APPELLANT
THOMAS EARL FAULLS, SR.**

Timothy V. Anderson
ANDERSON & ASSOCIATES, P.C.
Suite 104
2492 North Landing Road
Virginia Beach, Virginia 23456
(757) 301-3636
timanderson@virginialawoffice.com

*Counsel for Appellant*

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS:    ………………………………….    1

TABLE OF AUTHORITIES: ………………………………...    2

JURISDICTIONAL STATEMENT…………………………..    4

STATEMENT OF ISSUES  ……………………………….    4

STATEMENT OF CASE    ……………………………….    4

STATEMENT OF FACTS  ……………………………….    5

SUMMARY OF ARGUMENT …………………………….    11

ARGUMENT

       i. Standard of Review …………………………….    11

       ii. Discussion of Issues ………………………….    12

CONCLUSION…………………………………………….    25

REQUEST FOR ORAL ARGUMENT…………………………    25

CERTIFICATE OF COMPLIANCE……………………………    26

FILING AND MAILING CERTIFICATION……………………    27

<u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Brecht v. Abrahamson</u>, 507 U.S. 619, 113 S. Ct. 1710,
    123 L.Ed.2d 353 (1993)                                13

<u>Haley v. Blue Ridge Transfer Co.</u>, 802 F.2d 1532,
(4th Cir. 1986)                                          12

<u>Irvin v. Dowd</u>, 366 U.S. 717 (1961)                   15, 16

<u>Kotteakos v. United States</u>, 328 U.S. 750, 66 S.Ct. 1239,   13
    90 L.Ed. 1557 (1946)).

<u>Michelson v. United States</u>, 335 U.S. 469 (1948)        18

<u>Morgan v. Illinois</u>, 504 U.S. 719 (1992)               16

<u>Owen v. Duckworth</u> , 727 F.2d 643, 646 (7th Cir. 1984)   12

<u>Pierce v. Underwood</u>, 487 U.S. 552 (1988)             11

<u>Remmer v. United States</u>, 347 U.S. 227 (1954)          16

<u>Robinson v. Polk</u>, 438 F.3d 350 (4th Cir. 2006)         16

<u>Stockton v. Virginia</u>, 852 F.2d 740 (4th Cir. 1988)     16

<u>Turner v. Louisiana</u>, 379 U.S. 466 (1965)              15

<u>United States v. Baldovinos</u>, 434 F.3d 233 (4th Cir.2006)   13

<u>United States v. Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039,   13
    80 L.Ed.2d 657 (1984)

United States v. Hernandez, 975 F.2d 1035 (4th Cir. 192).   21

<u>United States v. McBride</u>, 676 F.3d  385 (4th Circuit)    21

United States v. Queen, 132 F.3d 991 (4th Cir. 1997)                    19

United States v. Rawle, 845 F.2d 1244 (4th Cir. 1988)              19, 20

United States v. Russell, 221 F.3d 615 (4th Cir.2000)              13

STATUTES

18 U.S.C. §924(c)                                                  5, 7

18 U.S.C. §1201(a)(1)                                              4, 7

18 U.S.C. §2241(a)(2)                                              5, 7

18 U.S.C §§2261(a)(2) and (b)(4)                                   5, 7

18 U.S.C. §3583(k)                                                 11

RULES

Rule 3 and Rule 4 of the Federal Rules of Appellate Procedure      4

Fed. R. Civ. P. 52(a)                                             11

Fed. R. Evid. 404(b)                                             4, 7, 8, 16, 18, 21

OTHER AUTHORITIES

Wright, Miller & Kane, Federal Practice and Procedure § 2818,
     at194 (1995)                                                 11

U.S. Const. amend. VI                                            13, 15

I.    JURISDICTION STATEMENT

This case is an appeal from the District Court's final judgment of the Appellant

date July 21, 2014. The Defendant filed this notice of appeal on July 29, 2014,

pursuant to Rule 3 and Rule 4 of the Federal Rules of Appellate Procedure.


II.    STATEMENT OF ISSUES

    a.  Was the Appellant denied effective assistance of counsel?

    b.  Was bad act evidence improperly admitted to trial in violation of FRE
       404(b)?

    c.   Did the Court err in determining this case to be a sex offender case
       causing registration under the sex offender registration act?

III.    STATEMENT OF CASE

    Thomas Earl Faulls, Sr., was the sole defendant named in a three count

Indictment filed by the Western District of Virginia Grand Jury on

January 9, 2013. Count 1 charges that from August 21, to 23, 2012, the

defendant did kidnap his estranged wife from Louisa, Virginia, and

transport her to Greenbrier County, West Virginia, in violation of 18

U.S.C. §1201(a)(1). Count 2 charges that between August 21, to 23,

2012, the defendant did kidnap his spouse to commit a crime of

4

violence, to wit: kidnapping and aggravated sexual battery, by use of a dangerous weapon, in violation of 18 U.S.C §§2261(a)(2) and (b)(4). Count 3 charges that between August 21, and 23, 2012, the defendant did possess a firearm in the furtherance of a crime of violence, in violation of 18 U.S.C §924(c).

On February 12, 2014, the defendant was found guilty by a jury of all three counts of the Indictment. Count 1 charged kidnapping, in violation of 18 U.S.C. § 1201(a)(1); Count 2 charged interstate domestic violence, in violation of 18 U.S.C. §§§ 2261(a)(2), 2261(b)(4), 2241(a)(2) and Count 3 charged possession of firearm in furtherance of crime of violence, in violation of 18 U.S.C. § 924(c).

IV.    STATEMENT OF FACTS

Evidence presented at trial by the government presented the following facts, of which are contested by the Appellant but recited to give this Court background on the evidence presented to the jury at the District Court level:

On August 21, 2012, the Appellant called his wife at her place of work in Richmond, Virginia, and requested that she come by their home in

Mineral and transport him to his truck located at a repair shop. She agreed and arrived at his home later that evening. After the Appellant's wife came home, the government presented evidence that they were going on a trip voluntarily or involuntarily. The evidence presented by the government painted a case that the Appellant revealed a set of zip ties formed into handcuffs, asking her if she was going the easy way or the hard way. Through the testimony of Ms. Faulls, she claimed to have gotten into the front passenger seat of his truck and saw a shotgun in the back seat area. She also realized the passenger door would not open from the inside, and the passenger window would not open. They eventually arrived at a hotel where they spent the night. The next morning the defendant requested coitus from his wife. She denied him, but he removed her feminine hygiene and proceeded to have intercourse with her. The government claimed that this was effectively a kidnapping and that the victim was the prisoner of the Appellant at all points thereafter. On the evening of August 23, 2012, the Appellant and his wife went to a restaurant for drinks. While having drinks, the Appellant allegedly confided in bar patrons that the woman with him was his wife and he had kidnapped her. When they eventually left the restaurant, after dinner, Ms. Faulls flagged down a vehicle, explained her situation, and requested

they drive her to the police department. After explaining her story to the police, they were able to locate the Appellant and place him under arrest.

The District Court for the Western District of Virginia issued an indictment against the Appellant on three counts. Count 1 charged kidnapping, in violation of 18 U.S.C. § 1201(a)(1); Count 2 charged interstate domestic violence, in violation of 18 U.S.C. §§§ 2261(a)(2), 2261(b)(4), 2241(a)(2) and Count 3 charged possession of firearm in furtherance of crime of violence, in violation of 18 U.S.C. § 924(c). The Appellant plead not guilty to the charge.

There were various pretrial motions by both sides. However, the scope of this appeal will specifically deal with pretrial motions handled by the District Court on February 10, 2014. During the pretrial motions, in the most basic summary, the Court dealt with the following issues:

1. Competency of the Appellant to Stand Trial

2. The admission of evidence of prior bad acts of the Appellant pursuant to FRE 404(b).

3. Admission of jail house conversations pursuant to 404(b)

4. Determination of admissible testimony of the government's expert

witness dealing with domestic violence.

During the February 10, 2014 hearing, the District Court found the Appellant competent to stand trial, allowed admission of tumultuous actions of the Appellant and his Wife over the objection of the Appellant, allowed admission of many jail house telephone calls of the Appellant over the objection of the Appellant, and excluded the expert domestic violence witness proposed by the government over the objection of the government.

A trial was conducted on February 11, 2014 and February 12, 2014 resulting in a guilty finding on all counts by a jury. During the trial, the Appellant preserved his objections of prior bad acts under 404(b) which were overruled the day before at (JA Vol 1:60 and JA Vol 1 108:19-22).

During the trial, there were several evidentiary objections by both sides that the District Court resolved none of which will be addressed in this brief. However, two factual issues that are germane to the following argument are as follows:

During day one of the trial, a trial that began in the morning of February 11,

2014, and during the day the weather began to become inclement. In the late afternoon, the District Judge discussed the pending weather issues with counsel and the jury (JA Vol 1 189-191). The problem with the weather is that on day two it became clear that the weather was going to become so bad that the Court would have to shut down. The judge gave the jury an option to allow them to work late that evening to examine an additional witness, under the premise that by doing so would make the next day shorter and possibly concluding the trial and getting them out before the storm came. When asking the jury, one particular juror said they would like to be home no later than 6:00pm (JA Vol 1 189:25-190:16) because they had a 70 mile drive. Over the objection of that juror, the Court continued the trial until 7:40pm (JA Vol 1 281:12) and then order the jury back the next morning at 8:00am.

During day two of the trial, starting on Joint Appendix Vol 2, page 391 of DAY 2 of the transcript through page 396, the government moved the Court to reconsider allowing it to introduce evidence from its expert witness based solely and exclusively on the Appellant's trial counsels error in broadening the scope of the examination of a particular witness. Specifically, as the Court recites (JA Vol 2 Page 392):

"I thought you had been very careful until we came to the bartender,

but you asked the question why she didn't leave. But more to the

point, why she didn't leave, that issue has but a physical and a

psychological component."

And then further the Court said:

"I think that's fair game. I think that's very appropriate not that we've

broadened the scope of what this case is about.

Based on the Appellant's trial counsels questioning of witnesses, the Court

reversed its previous decision to exclude the expert witness domestic

violence testimony and allowed it to come in. The last evidence the jury

heard was from the expert witness which essentially gave the jury evidence

that the victim in this case was clearly suffering from intimate-partner abuse

and was, from a clinical diagnosis, under the direct control of the Appellant

although not physically being restrained.

Following the guilty finding, the District Court sentenced the Appellant on

July 21, 2014 to a sentence of 295 months for which the Appellant timely

noted an appeal to this Court.  During the sentencing, the Court made a

finding that this offense was a sex offense as defined by 18 USC 3583(k)

triggering registration of the offense as a sex offender. The Court also

enhanced the Appellant's sentence for obstruction of justice related to jail

house conversations, mostly to his mother.


V.    SUMMARY OF ARGUMENT

The appellant was denied effective assistance of counsel and this case

should be reviewed on direct appeal for those issues and remanded for

a new trial.

ARGUMENT

STANDARDS OF REVIEW

The standard of review of the district court's opinion involves two inquiries.

The Court reviews historical facts for clear error. See Fed. R. Civ. P. 52(a).

Questions of law are reviewed de novo. See generally Pierce v. Underwood,

487 U.S. 552, 558 (1988). Ordinarily, the grant of a new trial is committed

to the sound discretion of the district court. See Wright, Miller & Kane,

Federal Practice and Procedure § 2818, at194 (1995). However, because the

ultimate factual determination regarding the impartiality of the jury

necessarily depends on legal conclusions, it is reviewed in light of all the

evidence under a "somewhat narrowed," modified abuse of discretion standard giving the appellate court "more latitude to review the trial court's conclusion in this context than in other situations." Haley v. Blue Ridge Transfer Co., 802 F.2d 1532, 1537-39 & nn.11-12 (4th Cir. 1986); Owen v. Duckworth , 727 F.2d 643, 646 (7th Cir. 1984).

DISCUSSION

Issue 1 – Ineffective assistance of counsel.

The Appellant was denied effective assistance of counsel on two grounds. First, through simple error of trial counsel in the examination of a bar tender witness, trial counsel opened the door and expanded the scope of the inquiry for the jury to consider regarding the victims mindset during her time with the Appellant at the bar. By asking a simple question of whether the victim was free to leave, this allowed the government to introduce damning and prejudicial evidence by its previously excluded domestic violence witness. The Court in an almost admonishing fashion, reprimands trial counsel for his lack of carefulness in questioning a witness and entirely pins the introduction of the expert witness testimony on this mistake. This issue is being raised on direct appeal because the record is clear on the manifest injustice the Appellant suffers from the actual record by the

mistake of his trial counsel allowing the introduction of critical government evidence. This Court routinely resolve petitions for a writ of habeas corpus by analyzing the petitioner's claims for "harmless error" under the demanding standard for such cases announced in Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Under the Brecht standard, a habeas petitioner may secure a writ only if he demonstrates that the error "actual[ly] prejudice[d]" him, which requires a showing that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Id. (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Of course, the Sixth Amendment right-to-counsel claims are most often brought in petitions for post-conviction relief. The Court's precedents make it clear, however, that this Court will consider even ineffectiveness claims—the most fact-intensive of the bunch—when they are not waived and when the Court need not look beyond the trial court record brought before the Court in a direct appeal. United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir.2006); United States v. Russell, 221 F.3d 615, 619 (4th Cir.2000); cf. United States v. Cronic, 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In this case, the factual basis for the Appellant's particularized Sixth Amendment claim lies completely within the record, insofar as but for the Appellant's trial counsels

critical mistake, damning evidence from an expert witness would not have

been allowed to be presented to the jury.  But for this critical mistake, the

jury had evidence before it primarily coming from the victim with no

understanding as to what she may have been thinking or not thinking as

someone in a intimate-partner abuse situation. The allowance of the expert

witness testimony was so critically important to exclude from trial that the

Defense successfully excluded it during pre-trial motions. Allowing it to

come in, solely because of trial counsels mistakes, is the definition of

"substantial and injurious effects or influence in determining the jury's

verdict."

Secondary, to the ineffective assistance of counsel claim, is what is also

clear in the record. The Court, the government and apparently trial counsel

for the Appellant were anxious about an impending storm. So anxious that

they held a jury in session until 7:40pm, after at least one juror clearly said

they had more than a 70 mile drive one way and wanted to leave by 6:00pm.

Then the Court orders the jury to return the next day at 8:00am.

It is likely, that at least the one juror who spoke up, arrived at their home

around 9:30pm on Day 1 and then was asked to get up and return at around

6:00am the next day. All of this because the Court, the government and the

Defendant's trial counsel wanted to avoid a storm. Instead of insisting that

the case should proceed in a regular fashion, everyone tried to get the case

done for the convenience of their own schedules. Even the jury had to have

felt rushed because the storm was upon them during the deliberation period.

It was the intent of everyone to get this case wrapped up. The question begs

as to whether the jury was prejudiced with this rushed justice. Without

question the juror who spoke up had to be angry about how much time he

was in Court on Day 1 and how early he had to return on Day 2.  Trial

counsel did not properly protect his client in compelling the Court to not

rush this proceeding, which results in again in "substantial and injurious

effects or influence in determining the jury's verdict."The Sixth and

Fourteenth Amendments to the United States Constitution guarantee a

criminal defendant the right to a trial by an impartial jury. See U.S. Const.

amend. VI; Irvin v. Dowd, 366 U.S. 717, 722 (1961) ("In essence, the right

to jury trial guarantees to the criminally accused a fair trial by a panel of

impartial, indifferent jurors. The failure to accord an accused a fair hearing

violates even the minimal standards of due process." (internal quotation

marks omitted)); Turner v. Louisiana  , 379 U.S. 466, 471-73 (1965). An

impartial jury is one that arrives at its verdict "based upon the evidence

developed at trial" and without external influences. <u>Irvin</u>, 366 U.S. at 722;

<u>see also</u> <u>Remmer</u>, 347 U.S. at 229. "No right touches more the heart of

fairness in a trial," <u>Stockton v. Virginia</u>, 852 F.2d 740, 743 (4th Cir. 1988),

and this right applies equally to sentencing proceedings that are tried to a

jury, <u>Robinson v. Polk</u>, 438 F.3d 350, 359 (4th Cir. 2006) (citing <u>Morgan v.</u>

<u>Illinois, 504 U.S. 719</u>, 727-28 (1992)).

Trial counsel failed his client substantially in not objecting to the way the

Court conducted this trial resulting in a violation of the Appellant's 6th

Amendment rights.

Issue 2 – Improper Admission of <u>404(b)</u> evidence:

<u>FRE 404(b)</u>

**(b) Crimes, Wrongs, or Other Acts.**

   **(1) *Prohibited Uses*.** Evidence of a crime, wrong, or other act is not admissible

to prove a person's character in order to show that on a particular occasion the

person acted in accordance with the character.

(**2**) ***Permitted Uses; Notice in a Criminal Case.*** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(**A**) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(**B**) do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice.

The Court allowed evidence over the Appellant's objections of the tumultuous relations between the Appellant and the victim leading up to the trial. The Appellant properly objected to the evidence at the pretrial motions hearing at (JA Vol 1 56:5) and during the trial on day 1 at (JA Vol 1 108:19). The Court found that the events leading up to the abduction provided a mindset for why the wife seemingly voluntarily got into the car with the Appellant which started the entire abduction.  The evidence that was presented was extremely prejudicial to the Appellant in that it showed a demonstrated pattern of alleged abuse of which all of it came from the allegations of the victim. The District Court found that because the heart of the Defense was that the wife acted

consensually that the jury had to know about the background (JA Vol 1 59:14-25).

 This Court commonly is asked to review whether admission on 404(B) is appropriate. The purposeful exclusion of such prior "bad act" evidence is not grounded in its irrelevance. Instead, the general inadmissibility of such evidence is based on the danger that this type of evidence will overly influence the finders of fact and thereby persuade them "to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." <u>Michelson v. United States</u>, 335 U.S. 469, 475-76 (1948); <u>United States v. Hernandez</u>,975 F.2d 1035, 1038 (4th Cir. 192). It is clear that the behavior between the Appellant and the victim was prejudicial to the Appellant. The Jury heard evidence that in late June of 2012, Lori Faulls separated from her husband of 20 years, Thomas Earl Faulls, leaving their home in Mineral, Virginia, to reside with their daughter, Britnee Faulls, in Williamsburg, Virginia. Over the course of the next couple months, the defendant harassed his wife on several occasions, both over the phone and in person. Evidence provided at the trial, through the victim and their daughter, described two specific occasions when the defendant became irate and threatened either his wife or his wife and their

daughter. The first occasion happened approximately two weeks after Lori left their home in Mineral. She returned to the home to retrieve some personal effects when the two began to argue. At some point during the argument, the defendant went into their detached garage and retrieved a gun. Lori called a friend and the defendant took the phone from her and told the friend (Lori Brenan) she had "killed her friend", meaning his wife. Being scared and upset, Lori fled from the home in her car, reporting that her husband chased her in his truck, striking her vehicle with his truck from behind. She reported this incident to the Louisa County Sheriff's Department. On another occasion, in the early morning hours of August 18, 2012, Faulls showed up at his daughter's home in Williamsburg, Virginia, where his wife was residing. He was very upset, screaming at both of them for not answering their phones. During the heated exchange, Faulls punched Lori in the chest and verbally threatened his daughter. At first, he would not allow either to leave the residence. However, after his daughter gave him $300, she was allowed to leave and Faulls left a while after his daughter. (PSR 2-4).

This Court has set a 4 prong test as cited in , United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)); see United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988):

(1) The evidence must be relevant to an issue, such as an element of

an offense, and must not be offered to establish the general character

of the defendant. In this regard, the more similar the prior act is (in

terms of physical similarity or mental state) to the act being proved,

the more relevant it becomes.

(2) The act must be necessary in the sense that it is probative

of an essential claim or an element of the offense.

(3) The evidence must be reliable.

(4) the evidence's probative value must not be substantially

outweighed by confusion or unfair prejudice in the sense that it tends

to subordinate reason to emotion in the fact finding process

It is the Appellant's position that prong 1 and 4 are clearly violated here.

First, the evidence of prior bad acts the jury had did not deal with previous

kidnapping attempts of the Appellant.  We have held that evidence is

"necessary," for purposes of establishing an exception under Rule 404(b),

when that evidence "is an essential part of the crimes on trial" or when that

evidence "furnishes part of the context of the crime." Rawle, 845 F.2d at

1247 n.4 (citations and quotation marks omitted).  The jury heard evidence

of a bad marriage, maybe even an abusive marriage. But the evidence was not directly related to the crimes charged. What is pivotal here is that if the victim were so afraid of the Appellant based on previous conduct, why would she have voluntarily came to his home to assist them on the date of the abduction? Like the evidence improperly admitted in <u>Hernandez</u> and <u>Johnson</u>, and <u>US v. McBride</u>, 676 F.3rd.  385, the evidence before this was unrelated to the crimes charged, as some of it occurred at a time before the offense conduct and in no case could be considered "necessary" to prove the element of the Appellant's intent to kidnap his wife or her consensual acts. Further as to prong 4, the evidence was clearly more prejudicial then probative. Accordingly, the <u>404(b)</u> evidence relating to previous bad acts allowed by the Court should have been excluded and not admitted.


Issue 3: Sex Offender Registry


The Court determined this offense to be a case requiring sex offender registry even in light of the governments own admission that this crime was unclear as to whether it required registration as a sex offender. As the government stated on Page 26 of the Sentencing Transcript:

"I will tell the Court I contacted the Department of Justice, the person that I work with often on the Sex Offender Registry and Notification Act. She and I both presented at the NAC recently on the SORNA setting which we know sometimes has some confusing definitions. She did not know of anything either way that stated whether it would be a sex offense."

The government deferred to the Court's standing order that it was discretionary whether to impose registration for this offense. The standing order states:

The Court's standing order no. 2013-04 (Re: Adoption of Special Conditions of Probation and Supervised Release in Criminal Cases Involving Sex Offenses and in Other Appropriate Criminal Cases) dated June 25, 2013, provides conditions of supervision for defendants who are convicted of a sex offense, or whose circumstances warrant the application of certain conditions. The following special conditions are appropriate in this case, after considering the nature of the instant offense; and the defendant's history and characteristics.

A. The defendant shall register with all local and state sex offender registration agencies in any jurisdiction where the defendant

resides, is employed, carries a vocation, or is a student.

B.  The defendant shall have no direct or indirect contact at any time, for any reason, with any victim identified in the presentence report or any victim's family.

C.  The defendant shall submit to an evaluation by a qualified mental health professional, approved by the probation officer, who is experienced in the treatment of sexual offenders.   The defendant shall take all medications reasonably related to his or her condition, complete all treatment recommendations,  and abide by all rules, requirements, and conditions imposed by the treatment provider until discharged from treatment by the provider.

D.   The defendant shall notify employers, family members, and others with whom the defendant has regular contact of the defendant's sex offender conditions and that the defendant is under the supervision of the probation officer. The  defendant shall   contact   the   probation   officer   within   72   hours   of

establishing an ongoing romantic relationship with another individual and provide the probation officer with information about the other party. The defendant shall also inform the other party of his or her prior criminal history concerning sex offenses.

F. The defendant shall not possess any sexually oriented material that, according to a qualified sex offender treatment provider, may interfere with an ongoing treatment regimen.

G. The defendant shall not possess any bindings, restraints, handcuffs, or other sadomasochistic paraphernalia.

The Appellant avers that it was improper to determine registration as a sex offender and classifying this case as a sex offender case. The Appellant objected to this determination (JA Vol 2 510:22-24) and the government made no clear indication that this should be a sex offender case based on the DOJ's own guidelines. For the Court to make the leap without the proper foundation was improper, not discretionary because such a finding lacked foundation and accordingly should be reversed.

## CONCLUSION

The Appellant moves for this Court to reverse the convictions for all counts for the reasons set forth herein and requests an entry of judgment acquittal or for a new trial.

### 1. REQUEST FOR ORAL ARGUMENT

The appellant respectfully requests the opportunity to argue this appeal before a panel of judges of this Court.

RESPECTFULLY SUBMITTTED

Thomas Faulls


By: /s/ Timothy V. Anderson

Counsel

Timothy V. Anderson, Esq.
Anderson & Associates, PC
2492 North Landing Rd, Ste 104
Virginia Beach, VA 23456
Tel. (757) 301-3636
Fax  (757) 301-3640
VSB 43803

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    This Brief contains 4,282 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point.

October 6, 2014

      /s/ Timothy V. Anderson

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 6th day of October, 2014, I have filed the required copies of the foregoing Opening Brief of Appellant and Joint Appendix with the Clerk, United States Court of Appeals for the Fourth Circuit via hand-delivery and electronically using the Court's CM/ECF system which will send notification of such filing to the following:

> Nancy S. Healey
> Office of the United States Attorney
> Room 130
> 255 West Main Street
> Charlottesville, Virginia 22902
> (434) 293-4283
> nancy.healey@usdoj.gov
> Counsel for Appellee

I hereby certify that on the 6th day of October, 2014, the Joint Appendix Volume II – Sealed was served on opposing counsel by United States Postal Service, First Class Mail.

/s/ Timothy V. Anderson